**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH A. TARPLEY, | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO.** |
| | ) | |
| v. | ) | Hon. |
| | ) | Judge Presiding |
| | ) | |
| CITY COLLEGES OF CHICAGO, | ) | Hon. |
| | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

**<u>COMPLAINT</u>**

NOW COMES the Plaintiff, ELIZABETH A. TARPLEY ("Plaintiff") by and through her attorneys, John P. DeRose & Associates, and as and for her Complaint against Defendant, CITY COLLEGES OF CHICAGO states as follows:

**JURISDICTION AND VENUE**

1.      This action is brought pursuant to 29 U.S.C. § 794; and the jurisdiction of this court is invoked pursuant to 29 U.S.C. § 794(a)(1).

2.      This is an action seeking redress for violations of rights guaranteed to the Plaintiff under the Americans with Disabilities Act (ADA) of 1990, § 2 *et seq.*, 42 U.S.C.A. § 12101 *et seq.*, under Title VII of the Civil Rights Act of 1964("Title VII"), 42 U.S.C. §§ 2000e et seq., as amended, and under the Family Medical Leave Act (FMLA), 29 U.S.C.A. § 2615(a)(1) when she was subjected to a hostile work environment and was ultimately constructively terminated because of interference and retaliation by her employer as she sought to exercise her rights under these Acts.   Plaintiff seeks mandatory injunctive relief and damages to redress Defendant's discriminatory employment practices.

3.    Venue lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1331, 1343, and 1391(b) because the events giving rise to this claim occurred in this judicial district and Plaintiff and Defendant and its employees reside in this District.

## PARTIES

4.    At all times herein mentioned. Plaintiff, ELIZABETH A. TARPLEY (hereinafter sometimes simply referred to as ''Plaintiff''), is a resident of Chicago, Illinois and, at all relevant times, and was employed by the Defendant CITY COLLEGES OF CHICAGO (hereinafter sometimes simply referred to as "City Colleges of Chicago" or "Defendant").

5.    At all times herein mentioned, Defendant City Colleges of Chicago is a community college district formed under and governed by the Illinois Public Community Colleges Act, 110 ILCS 805/1-1 *et seq*. was and is believed and alleged hereon to be a corporation duly organized, existing, and operating within the jurisdiction of this Court.

6.    Defendant City Colleges of Chicago is also an employer subject to suit under the FMLA and the ADA in that Defendant is in an industry affecting commerce and had 15 or more employees in each of 20 or more weeks in the current or preceding calendar year.

## FACTUAL ALLEGATIONS

7.    Defendant City Colleges of Chicago is the largest community college system in Illinois and one of the largest in the nation with seven college locations and six satellite sites.

8.    Kennedy-King College is one of Defendant's seven college locations.

9.    Plaintiff was hired by Defendant as the Assistant Dean–Information Technology at the Kennedy-King College campus effective May 16, 2011.

10.    From May 16, 2011 through August 16, 2013, Plaintiff continued as Director of Information Technology and never had a negative review and always performed her job according to the expectations of her employer.

11.     Plaintiff received high praise for her work as the Kennedy-King College IT Department excelled under her leadership.

12.     Plaintiff suffers from severe endometriosis, a condition that has required multiple surgeries and has resulted in problems with infertility, including miscarriages, and ovarian and tubal issues.

13.     Endometriosis causes severe pain and discomfort on a monthly basis, as well as painful cysts that require surgical removal.

14.     Plaintiff is also under treatment for depression and anxiety disorder.

15.     From June 22, 2012 to July 20, 2012, plaintiff required medical leave to recover from a surgery related to her qualifying condition and the four-week medical leave was approved by Defendant ("First Leave").

16.     The Approval Form sent by Defendant City Colleges of Chicago stated, "You have a right under the FMLA for up to twelve (12) weeks of unpaid leave in a calendar year.  The four (4) week period of this leave from June 22, 2012 to July 20, 2012 will be counted towards your annual 12-week FMLA leave entitlement for the 2012 calendar year."

17.     During the First Leave, Plaintiff continued to work from home for Defendant City Colleges of Chicago, monitoring emails on a daily basis, participating in calls as necessary and performing work on current projects.

18.     Throughout plaintiff's first leave, City Colleges of Chicago continued her regular salary payments without interruption.

19.     The IT Department of Defendant City Colleges of Chicago continued to run smoothly during Plaintiff's First Leave.

20.     In August 2012, Plaintiff requested intermittent leave to cover the time period of August 7, 2012 to July 7, 2013 to cover ongoing treatment and occasional illnesses related to her endometriosis.

21.     This intermittent leave period was approved by Defendant City Colleges of Chicago in October 2012.

22.     The approval form stated "[t]he intermittent period of this leave from August 7, 2012 to July 7, 2013 will be counted in blocks of time towards your annual FMLA leave entitlement for the 2012 and 2013 calendar year."

23.     Plaintiff required approximately 1-2 days off per month due to complications relating to her endometriosis during the approved intermittent leave period, as well as several days in January when she suffered a miscarriage ("Intermittent Leave").

24.     Throughout the period of the intermittent leave, City Colleges of Chicago continued to pay plaintiff salary without interruption.

25.     Throughout the Intermittent Leave, Plaintiff continued to work from home for Defendant City Colleges of Chicago if necessary and remained in contact with the department by monitoring emails.

26.     At no time did plaintiff's job performance or the department productivity suffer, and she continued to perform her job according to the expectations of her employer.

27.     In November 2012, plaintiff became pregnant through the use of in vitro fertilization, which resulted in a miscarriage in December 2012.

28.     In January 2013, plaintiff underwent D&C surgery as a result of the miscarriage.

29.     In or around May 2013, Plaintiff noticed a negative shift in the attitudes of her superiors as she was singled out for disparate treatment.

30.     On May 10, 2013 Arahele Stevens (hereinafter simply referred to as "Ms. Stevens"), Vice Chancellor Of Information Technology and plaintiff's direct supervisor emailed that "there is no work from home policy", even though the exact opposite had been told to her in the past.

31.     Ms. Stevens responded rudely and ignored plaintiff's request that a work from home day be set off with the day she had worked while on leave.

32.     Because of Defendant's rule stated prohibition against working from home, Plaintiff was required to request FMLA time off for days that she would otherwise have been able to work from home.

33.     Upon information and belief, many employees of Defendant City Colleges of Chicago continue to work remotely from home as necessary.

34.     Upon information and belief, Defendant's shift in policy on working from home was not communicated to any other employees.

35.     Plaintiff was told that "there is no work from home policy", even though the exact opposite had been told to her in the past.

36.     Because of Defendant's rule stated prohibition against working from home, Plaintiff was required to request FMLA time off for days that she would otherwise have been able to work from home.

37.     Upon information and belief, many employees of Defendant City Colleges of Chicago continue to work remotely from home as necessary.

38.     Upon information and belief, Defendant's shift in policy on working from home was not communicated to any other employees.

39.     Upon information and belief, Defendant does not extensively audit employee time when FMLA leave is requested.

40. As a result of the endometriosis, Plaintiff is faced with the difficult reality that she needs a complete hysterectomy as the only permanent relief from the pain and discomfort caused by her condition on a regular basis.

41. In a final attempt to have a child before losing the ability to reproduce, Plaintiff attempted in vitro fertilization ("IVF"). In connection with IVF, additional leave required.

42. On May 30, 2013 Heather Ward (hereinafter simply referred to as "Ms. Ward"), Benefits Supervisor of Defendant City Colleges of Chicago requested additional certification and records from plaintiff's physician, even though such information had been furnished when the leave was requested.

43. On June 5, 2013, plaintiff filed a complaint of employment discrimination with the Illinois Department of Human Rights. (See Exhibit "A" attached hereto and made a part hereof).

44. On June 6, 2013 Ms. Ward informed plaintiff that, due to a new rolling calendar calculation method, the relevant leave period would be calculated by looking back to June 2012, even though the FMLA approval for June 2012 did not contain such notification.

45. On June 11, 2013, plaintiff filled out an Intake Questionnaire with the Equal Employment Opportunity Commission, alleging employment discrimination.

46. On June 20, 2013 in response to an email from plaintiff to a staff member regarding the status of a project, Ms. Stevens told plaintiff that she should not be working while she was on leave, including monitoring/responding to email.

47. Staff members who were supervised by plaintiff were further instructed not to include her on their email communications.

48. On June 23, 2013, plaintiff became aware that her job with Defendant City Colleges of Chicago has been posted online.

49.     June 23, 2013, plaintiff emailed Ms. Stevens, Craig Lynch, Stephanie Tomino, Joyce, Esther, and Araceli Cabrales-Medina (hereinafter simply referred to as "Ms. Cabrales"), asking whether the posting of her position was in error.

50.     No one responded to her email inquiry.

51.     While plaintiff was on leave, Ms. Stevens continued to ignore all emails and text messages sent to her by plaintiff regardless of the subject matter.

52.     On June 24, 2014, plaintiff filed a charge of discrimination with the equal employment opportunities commission, alleging discrimination based on disability and retaliation. (See Exhibit "B" attached hereto and made a part hereof).

53.     On June 26, 2013, plaintiff became aware that Ms. Stevens, who had recently been appointed the Interim President of Defendant City Colleges of Chicago had moved into plaintiff's office although there were numerous other vacant offices available.

54.     By the end of June 2013, paychecks from Defendant City Colleges of Chicago to plaintiff had ceased.

55.     On June 26, 2013, plaintiff was experiencing anxiety/panic attacks and was in regular contact with both her physicians and her psychiatrist.

56.     In July 2013, plaintiff became impregnated through in vitro fertilization, however, plaintiff miscarried because the embryo did not have a heartbeat.

57.     On July 12, 2013 when plaintiff called the District Payroll Department to inquire about the payroll error, she was treated rudely and directed to Ms. Ward.

58.     Due to complications resulting from endometriosis, infertility, and ovarian and tubal factors, Plaintiff submitted an application for medical leave which was approved through July 12, 2013 ("Second Leave").

59. Upon information and belief, Defendant targeted Plaintiff and began to audit her time when she requested the Second Leave.

60. Because of the change in the work environment, Plaintiff was experiencing high anxiety and became fearful of returning to work.

61. On July 15, 2013, plaintiff emailed Ms. Stevens, Mr. Lynch, and the EEOC Case Coordinator that she was unable to return to work in the current environment.

62. On July 15, 2013, after speaking to Stephanie Tomino, plaintiff sent a follow-up email indicating that she was looking forward to returning to work.

63. On July 16, 2013, plaintiff returned to work at Defendant City Colleges of Chicago.

64. On July 26, 2013, plaintiff learned that Defendant City Colleges of Chicago was investigating her and auditing records because the time, she had taken off in 2013 was at the same time of year as the leave time she had taken in 2012.

65. On information and belief, plaintiff's job was posted as part of a plan to transfer her to the District Office to keep a better eye on her.

66. Experiencing such high anxiety in her current hostile work environment, on July 31, 2013 plaintiff emailed Ms. Ward, Ms. Stevens, and Mr. Lynch regarding a revised request and inquiring about a reasonable accommodation that would allow her to work from home.

67. On August 1, 2013 after requiring additional language on the Leave Request Form, Defendant City Colleges of Chicago granted plaintiff's intermittent leave request for 1 to 2 days per month.

68. On August 2, 2013 Ms. Ward informed plaintiff that her doctor would be required to submit an original signature rather than a stamp signature on all request forms in the future.

69.     Personnel from the office of plaintiff's Doctor complained about the burden of this additional requirement.

70.     When on August 2, 2013, plaintiff received an email asking for a Weekly Status Report on all major issues while she was on leave, she requested that one of her employees send the email from plaintiff's email account.

71.     The employee did not follow that request.

72.     The employee later told plaintiff, "it was requested when you are out on leave to alleviate the use of your account while you were on FMLA. Considering you are out now, it was a similar situation where that (sic) could have pointed to you working while on leave. I didn't know of any reason for it to be sent from your account."

73.     Because of the stress and depression Plaintiff was experiencing in the workplace, her psychiatrist recommended that plaintiff cease her employment with the City Colleges of Chicago.

74.     By August 5, 2013 the anxiety, hostility, and retaliation Plaintiff was experiencing in her current work environment became so unbearable and deleterious to her health that she was constructively discharged.

75.     On August 5, 2013 plaintiff sent an email to Defendant City Colleges of Chicago, tendering her resignation effective August 16, 2013.

76.     On August 9, 2013--before her resignation would become effective, plaintiff emailed Mr. Lynch seeking a conversation about the circumstances that led to the tender of her resignation.

77.     Mr. Lynch responded that he was more than willing to sit down and talk with plaintiff, but he could not conduct business by text messaging, adding, "I'm sure you understand that."

78.     When plaintiff sought payment for the days she worked while on leave, personnel from the Human Resources Department of Defendant City Colleges of Chicago continued to insist that plaintiff owed $1329.60 for pay not earned.

79.     On August 15, 2013, plaintiff emailed Defendant City Colleges of Chicago, reiterating that she had already returned all equipment and asking that further inquiries about it cease.

80.     Defendant retaliated against Plaintiff for taking medical leave in the following ways:

   a.     Defendant began to scrutinize and audit Plaintiff's time beginning with her Second Leave request, which is not consistent with Defendant's treatment of other employees requesting FMLA leave;

   b.     Plaintiff was singled out and prohibited from working from home with no explanation while other employees retained the privilege;

   c.     Defendant made unnecessary communications/requests to Plaintiff's physician when all relevant information had been previously provided.  Plaintiff's physician complained about Defendant's contact;

   d.     Defendant posted Plaintiff's job while she was on medical leave;

   e.     Defendant ignored multiple communications from Plaintiff inquiring about her job status while on medical leave;

   f.     Defendant instructed her subordinates and other staff not to communicate with Plaintiff while she was on medical leave; and

   g.     Defendant interfered with Plaintiff's right to FMLA leave by denying compensation for certain days that she was required to work while she was on medical leave.

h.     Defendant retaliated against plaintiff, through the heightened scrutiny, unfair and unequal discipline, and the hostile treatment of her.

81.     Throughout her employment at city colleges of Chicago and continuing to the present, plaintiff has been under the care of her psychiatrist.

82.     On September 11, 2013, plaintiff filed a charge with the Illinois Department of Human Rights, alleging discrimination against defendant city colleges Chicago based on sex, race, disability, and retaliation. (See Exhibit "C" attached hereto and made a part hereof).

83.     On October 3, 2013, plaintiff was again impregnated through in vitro fertilization.

84.     At twelve weeks of her pregnancy, plaintiff lost one of two twins.

85.     On November 20, 2013, plaintiff signed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission, alleging discrimination against the City Colleges of Chicago based on retaliation and disability. (See Exhibit "D", attached hereto and made a part hereof).

86.     On June 9, 2014, plaintiff received a Right to Sue Letter from the Equal Employment Opportunity Commission. (See Exhibit "E", attached hereto and made a part hereof).

87.     On June 19, 2014, plaintiff finally gave birth to a healthy baby boy.

**COUNT I**
**DISCRIMINATION AND VIOLATION OF PLAINTIFF'S**
**RIGHTS UNDER**
**THE FAMILY MEDICAL LEAVE ACT,**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**AND THE AMERICANS WITH DISABILITIES ACT**

88.     Plaintiff re-alleges and incorporates the foregoing paragraphs 1 through paragraph 87 of this Complaint as paragraphs 1 through paragraph 87 of Count I as though fully set forth at this place.

89.     Plaintiff is disabled in that she was diagnosed with severe endometriosis, a condition that has required multiple surgeries and has resulted in problems with infertility, including miscarriages, and ovarian and tubal issues.

90.     Plaintiff is disabled in that she also was diagnosed with under treatment for depression and anxiety disorder.

91.     Defendant also treated Plaintiff as a person with a disability by granting some of the accommodations she requested.

92.     Plaintiff was qualified for the job she held with Defendant and performed all job functions to Defendant's legitimate employment expectations.

93.     Despite Plaintiff's qualifications and job performance, Defendant discriminated and retaliated against her because of her disability and her attempts to exercise your rights under the Americans With Disabilities Act and the Family Medical Leave Act.

94.     Defendant's discrimination and retaliation against Plaintiff and denial of her rights under the Americans with Disabilities Act was intentional.

95.     Defendant discriminated against Plaintiff in the terms and conditions of her employment.

96.     Similarly situated non-disabled employees were not subjected to the same terms and conditions of employment as the Plaintiff.

97.     The constructive termination of plaintiff by Defendant City Colleges of Chicago resulted from its illegal discrimination and retaliation against her.

98.     Defendant's actions, as described above, are in violation of the ADA in that Defendant City Colleges of Chicago acted to discriminate and retaliate against Plaintiff in the terms and conditions of her employment because of her disability and in a studied attempt to deprive her of rights, benefits and protection under that statute.

99.     As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages, the indignity of discrimination, which has manifested in emotional distress and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff Elizabeth Tarpley requests the following relief:

A.      Compensatory damages against Defendant in the amount of $1,000,000.00;

B.      Punitive damages against Defendant in the amount of $1,000,000.00;

C.      Reasonable attorney's fees and costs of this suit; and

D.      Such other relief as this Honorable Court deems just and appropriate.

**COUNT II**
**RETALIATION AGAINST PLAINTIFF**
**FOR EXERCISING HER RIGHTS UNDER**
**THE FAMILY MEDICAL LEAVE ACT,**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**AND THE AMERICANS WITH DISABILITIES ACT**

100.    Plaintiff re-alleges and incorporates the foregoing paragraphs 1 through paragraph 99 of this Complaint as paragraphs 1 through paragraph 99 of Count II as though fully set forth at this place.

101.    Plaintiff met her employer's legitimate employment expectations.

102.    Plaintiff engaged in protected activity when she reported the harassment and violations of the ADA to the Defendant City Colleges of Chicago in July 2013.

103.    Plaintiff filed Charge of Discrimination against Defendant City Colleges of Chicago with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights.

104.    After engaging in said protected activity, Defendant City Colleges of Chicago has engaged in many acts of retaliatory actions which include, but are not limited to, conspiring

among its Supervisors, Managers, Human Resources Representatives, and Upper Management to deprive plaintiff of rights, benefits and protections guaranteed to her under the law, continually refusing to provide Plaintiff with a reasonable accommodation in her working conditions although Plaintiff is a qualified employee, constructively terminating Plaintiff although she was performing to her employer's legitimate expectations and could continue to perform her job, and otherwise harassing Plaintiff in various ways designed to deprive her of those rights, benefits, and protections to which she was entitled and to impede her ability to work for Defendant.

105.    There is a causal connection between Plaintiff's protected activity and Defendant's retaliatory actions.

106.    Similarly situated employees who did not engage in protected activity were treated more favorably than Plaintiff.

107.    Defendant's constructive termination of plaintiff was for illegal retaliation.

108.    Defendant's actions, as described above, are in violation of the ADA as the Defendant has engaged in acts of retaliation because of Plaintiff's engagement in protected activities.

109.    As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages, the indignity of discrimination, which has manifested in emotional distress and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff Elizabeth Tarpley requests the following relief:

A.    Compensatory damages against Defendant in the amount of $1,000,000.00;

B.    Punitive damages against Defendant in the amount of $1,000,000.00;

C.    Reasonable attorney's fees and costs of this suit; and

D.     Such other relief as this Honorable Court deems just and appropriate.


**COUNT III**
**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**AND THE FAMILY MEDICAL LEAVE ACT**

110.    Plaintiff re-alleges and incorporates the foregoing paragraphs 1 through paragraph 109 of this Complaint as paragraphs 1 through 109 of this Count III as though fully set forth at this place.

111.    Plaintiff is disabled in that she was diagnosed with severe endometriosis, a condition that has required multiple surgeries and has resulted in problems with infertility, including miscarriages, and ovarian and tubal issues.

112.    Plaintiff is disabled in that she also was diagnosed with under treatment for depression and anxiety disorder.

113.    Plaintiff is a qualified person with a disability in that Plaintiff can perform the essential functions of her job, or a job, with a reasonable accommodation.

114.    Defendant was able to provide a reasonable accommodation to Plaintiff in the form of actions such as, when she was suffering from her disability, allowing plaintiff to work from home as it did with so many other employees.

115.    Defendant was able to provide a reasonable accommodation to Plaintiff in the form of actions such as, when she was suffering from her disability, allowing her to take intermittent leave.

116.    Such reasonable accommodations would not cause an undue hardship on Defendant.

117.    Defendant refused to provide Plaintiff with these reasonable accommodations without subjecting her to heightened scrutiny.

118.     Defendant failed to engage in the required interactive process to determine what it could do to provide Plaintiff with a reasonable accommodation.

119.     Defendant's actions, as described above, are in violation of the Americans With Disabilities Act and the Family Medical Leave Act, as Defendant did not offer Plaintiff, a qualified individual with a disability, an available reasonable accommodation.

120.     As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered lost wages, the indignity of discrimination, which has manifested in emotional distress and further has negatively impacted her future ability to support herself, harmed her earning capacity, disrupted her personal life, and caused loss of enjoyment of the ordinary pleasures of life.

WHEREFORE, Plaintiff Elizabeth Tarpley requests the following relief:

A.     Compensatory damages against Defendant in the amount of $1,000,000.00;

B.     Punitive damages against Defendant in the amount of $1,000,000.00;

C.     Reasonable attorney's fees and costs of this suit; and

D.     Such other relief as this Honorable Court deems just and appropriate.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

121.     The Plaintiff repeat and re-allege paragraphs 1 through 120 of this Complaint as paragraphs 1 through 120 of Count IV as though fully set forth herein.

122.     Defendant City Colleges of Chicago was repeatedly advised of the rights of Plaintiff and knowing full well of her diagnoses of severe endometriosis, her infertility, miscarriages, and ovarian and tubal and under treatment for depression and anxiety disorder.

123.     Defendant City Colleges of Chicago well knew of plaintiffs need for understanding and accommodation, and the actions of Defendant, its supervisors, its Human Resources Department, and its high management employees were extreme and outrageous.

124.  The actions of the Defendant City Colleges of Chicago, its supervisors, its Human Resources Department, and its high management employees were done intentionally and maliciously to cause severe emotional distress to Plaintiff.

125.  Defendant, its supervisors, its Human Resources Department, and its high management employees knew or reasonably should have known that their actions had a high probability of causing severe emotional distress to Plaintiff.

126.  The actions of Defendant City Colleges of Chicago, its supervisors, its Human Resources Department, and its high management employees were intentional and malicious and demonstrated a willful and wanton disregard for the rights of Plaintiff and had a high probability of causing severe emotional distress to her.

127.  Plaintiff has suffered and continues to suffer from severe emotional distress.

WHEREFORE, Plaintiff respectfully prays this Honorable Court to grant the following relief:

    A.     Compensatory damages against Defendant in the amount of $1,000,000.00;

    B.     Punitive damages against Defendant in the amount of $1,000,000.00;

    C.     Reasonable attorney's fees and costs of this suit; and

    D.     Such other relief as this Honorable Court deems just and appropriate.

Respectfully submitted,

S/ John P. DeRose
John P. DeRose
One of Plaintiff's Lawyers

John P. DeRose & Associates
15 Spinning Wheel Road
Suite 428
Hinsdale, Illinois  60521
(630) 920-1111 Office
(630) 920-1170 Fax
john@johnderoselaw.com