UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH A. TARPLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 C 6712 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| CITY COLLEGES OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Elizabeth Tarpley worked for Defendant City Colleges of Chicago ("City Colleges") as the Assistant Dean of Information Technology at its Kennedy-King College location from May 16, 2011 until her resignation on August 16, 2013. She then filed this suit alleging that City Colleges discriminated against her on the basis of her race, sex, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Before the Court is City Colleges' partial motion to dismiss Tarpley's First Amended Complaint [14], which is granted. Because Tarpley has not alleged a Title VII retaliation claim, that claim is dismissed, but she may proceed on her unchallenged FMLA and ADA retaliation claims. The Title VII constructive discharge claims are dismissed because Tarpley did not include them in her Equal Employment Opportunity Commission ("EEOC") charge nor can they be considered reasonably related to the claims raised in that charge. Tarpley's Title VII and FMLA failure to accommodate claims are dismissed because those statutes do not provide for a claim for the failure to accommodate a disability.

Finally, Tarpley's claim for intentional infliction of emotional distress ("IIED") is dismissed as time-barred.

## BACKGROUND[1]

Tarpley began working at Kennedy-King College as the Assistant Dean of Information Technology on May 16, 2011. While in that position, she performed according to expectations and never received a negative review. But because she suffers from endometriosis, which causes her severe pain, as well as from depression and anxiety, Tarpley needed time off from work. She was approved for a four-week medical leave from June 22 to July 20, 2012 while recovering from a surgery related to her endometriosis. This leave was to be counted towards her annual entitlement to twelve weeks of leave under the FMLA in 2012. During this time, Tarpley continued to work from home, monitoring emails and participating in calls as necessary.

In August 2012, Tarpley requested intermittent leave from August 7, 2012 to July 7, 2013 for ongoing treatment and occasional illness related to her endometriosis. City Colleges approved this leave period in October 2012, indicating that it would be counted towards her FMLA leave entitlement in 2012 and 2013. Tarpley used approximately one to two days of leave a month during this period, continuing to work from home if necessary.

Although Tarpley's work performance and the performance of her department did not suffer while she used intermittent leave, in May 2013, she noticed that her superiors were singling her out for using leave time. On May 10, 2013, the Vice Chancellor of Information Technology, Arshele Stevens, informed Tarpley that City Colleges did not allow employees to work from home even though she had been told differently in the past and other City Colleges

---

[1] The facts in the background section are taken from Tarpley's First Amended Complaint and the exhibits attached thereto and are presumed true for the purpose of resolving City Colleges' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

employees continued to work from home. This meant that Tarpley had to request FMLA time off for days she otherwise would have worked from home. City Colleges also began to ask for additional verification for leave time even though Tarpley provided the human resources department with all the required information. City Colleges also retroactively changed the method by which it credited Tarpley's FMLA leave.

On June 5, 2013, Tarpley completed an intake form with the Illinois Department of Human Rights ("IDHR"), in which she complained about the fact that she could not work from home and was forced to take FMLA leave as a result. She claimed sex, race, and disability discrimination and retaliation. On June 11, 2013, Tarpley filled out an intake questionnaire with the EEOC, which resulted in a June 24, 2013 formal charge alleging ADA discrimination and retaliation.

Also in June 2013, while Tarpley was on FMLA leave, she responded to an email from a staff member who inquired about the status of a project. When Stevens learned of this on June 20, she informed Tarpley that Tarpley should not be working while on leave, meaning that she should not be monitoring or responding to emails. Staff members were also instructed not to include Tarpley on emails while she was on leave. On June 23, Tarpley learned that City Colleges had posted an opening for her position online. When Tarpley inquired as to whether the posting was in error, no one responded. On June 26, Tarpley learned that Stevens had moved into her office. Tarpley stopped receiving paychecks from City Colleges at the end of June.

These events aggravated Tarpley's anxiety attacks. She also had a miscarriage, which, coupled with other complications from her endometriosis, required her to request additional leave, which was approved through July 12, 2013. On July 15, 2013, Tarpley informed Stevens, Craig Lynch, and City Colleges' EEOC Coordinator that she could not return to work under the

current conditions. But after speaking with Stephanie Tamino, she changed her position, emailing to say that she was looking forward to returning to work, which she did the following day.

On July 26, Tarpley learned City Colleges was auditing her records because the time she took off that summer fell at the same time of year as the time she took off for FMLA leave in 2012. Anxious about her work environment, on July 31, she asked for additional leave and an accommodation to allow her to work from home. Her intermittent leave request for one to two days off per month was granted on August 1, 2013, after she provided additional language on the leave request form. On August 2, Tarpley learned that her doctor would be required to submit an original signature, instead of a stamp, on all future leave request forms, which her doctor's office stated would be burdensome. Ultimately, based on her anxiety and the hostility Tarpley experienced at work and at her psychiatrist's recommendation, Tarpley submitted her resignation on August 5, effective August 16. Tarpley also sought payment for days she worked while on leave, but City Colleges responded that Tarpley instead owed City Colleges $1,329.60 for pay she had not earned.

On September 11, 2013, Tarpley filed a charge with the IDHR alleging discrimination and retaliation based on sex, race, and disability with respect to events that occurred in May 2013. On November 20, 2013, she filed an amended EEOC charge, alleging discrimination and retaliation based on disability that led to her constructive discharge. On June 9, 2014, she received a right to sue letter from the EEOC. She then filed suit on August 29, 2014.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

4

1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Title VII Retaliation Claim (Count II)

In Count II, Tarpley alleges that she was retaliated against in violation of the FMLA, Title VII, and the ADA. To state a claim for retaliation, Tarpley must allege that "she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 n.9 (7th Cir. 2013)). In her Complaint, Tarpley alleges that she "engaged in protected activity when she reported the harassment and violations of the ADA to the Defendant City Colleges of Chicago in July 2013." First Am. Compl. ¶ 100. She also alleges that she filed charges of discrimination against City Colleges, and that after making these reports, City Colleges retaliated against her. But City Colleges argues that none of this protected activity relates to Title VII, and that Tarpley's first protected activity under Title VII occurred after she resigned from the City Colleges when she filed her September 2013 EEOC charge, in which she complained of race and sex discrimination. Because Tarpley does not allege that she

5

was subjected to any adverse employment action after she resigned in August 2013, City Colleges contends that her Title VII retaliation claim must be dismissed.

Tarpley responds not by pointing to protected activity related to her race or sex but rather by arguing that "she engaged in protected activity under Title VII as she filed complaints at both the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR), alleging that she was discriminated against based upon her disability status and retaliation when she exercised her rights under the ADA." Doc. 18 at 4. But Title VII only covers unlawful employment practices and retaliation on the basis of an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Disability does not fall under any of these categories but instead is protected by its own separate statute, the ADA, under which Tarpley also seeks recovery. Tarpley cannot proceed on a retaliation claim based on this ADA-protected activity. *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (summary judgment properly granted to employer on retaliation claim where plaintiff's complaint to employer "did not invoke any action protected by Title VII")

But Tarpley did attach an intake form that she filed on June 5, 2013 with the IDHR to the First Amended Complaint. In that form, she stated that she was being discriminated and retaliated against not only because of her disability but also because of her sex and race. Ex. A to First Am. Compl. Although filling out this intake form qualifies as protected activity,[2]

---

[2] City Colleges contends that the intake form does not qualify as protected activity because it explicitly states that it is not a charge. *See* Ex. A to First Am. Compl. at 3 ("THIS IS NOT A CHARGE. If IDHR accepts your claim, we will send you a charge form for signature."). But protected activity is not limited to formal charges; it is also unlawful for employers to retaliate against employees for "oppos[ing] any practice made an unlawful employment practice" and otherwise "assist[ing], or participat[ing] in any manner in an investigation" under Title VII. 42 U.S.C. § 2000e-3; *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) ("[A]n informal complaint may constitute protected activity for purposes of retaliation claims."). Filling out an intake questionnaire has been recognized as sufficient to constitute protected activity. *See, e.g.*, *Anderson v. Bellsouth Telecomm.*, No. 2:12-cv-03537-RDP, 2015 WL 461698, at *16 n.16 (N.D. Ala. Feb. 4, 2015) (finding that plaintiff engaged in protected activity by filing

6

Tarpley's allegations are not sufficient to support a Title VII retaliation claim where she has not alleged that City Colleges was aware of the fact that she completed the intake form in which she complained of sex and race discrimination and retaliation. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) ("It is not sufficient that [an employer] could or even should have known about [an employee's] complaint; [the employer] must have had actual knowledge of the complaints for [its] decisions to be retaliatory." (alterations in original) (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004))); *Volling v. Antioch Rescue Squad*, --- F. Supp. 3d ----, 2015 WL 1089440, at *3–4 (N.D. Ill. Mar. 9, 2015) (dismissing retaliation claim where "[n]othing alleged in the complaint suggests [defendant's] knowledge of Plaintiffs' protected activity or any retaliatory motive"); *Owens v. Enable Holdings*, No. 11 C 1703, 2012 WL 3638028, at *3 (N.D. Ill. Aug. 22, 2012) (dismissing retaliation claim where plaintiff failed to allege that defendant was aware of complaints). Thus, Tarpley's Title VII retaliation claim is dismissed. But her ADA and FMLA retaliation claims contained in Count II, which City Colleges have not challenged, will proceed to discovery.

## II. Title VII Constructive Discharge Claim (Counts I and II)

City Colleges next moves to dismiss Tarpley's Title VII constructive discharge claims in both Counts I and II, arguing that Tarpley failed to exhaust her administrative remedies. Although Tarpley filed a formal charge alleging sex and race discrimination and retaliation on September 11, 2013, she "may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). This requirement is

---

EEOC intake questionnaire); *Codada v. Grace Adult Day Health Care Inc.*, No. 13-2003, 2014 WL 988597, at *5 n.2 (E.D. Pa. Mar. 14, 2014) ("Contacting the EEOC and filling out government agency intake forms alleging discrimination is a protected activity.")

intended to provide City Colleges with notice of the nature of the claims against it and provide the EEOC and City Colleges with the opportunity to settle the dispute before litigation is instituted. *Geldon*, 414 F.3d at 819. An allegation in an EEOC charge is reasonably related to a federal claim if it involves "the same conduct and implicate[s] the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). The relevant inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (quoting *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999)).

Tarpley's charge, filed after she resigned from City Colleges, does not include any mention of her resignation or suggest that the alleged discrimination and harassment based on her sex and race led her to resign in August 2013. Instead, the charge focuses on harassment, specifically being given "unfair deadlines which forced [her] to work from home while [she] was off on FMLA" in May 2013. Ex. C to First Am. Compl. This is not enough to bring her constructive discharge claims within the scope of the charge, as she was aware of the action and its potential discriminatory nature at the time she filed the charge and could have asserted it as a basis for investigation at that time. *See Ajayi*, 336 F.3d at 530 (where plaintiff was aware of the action at time of filing of charge, suspected it was discriminatory, but did not include it as part of charge while including other allegations of discriminatory action, the omitted action was not actionable as part of Title VII claim); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501–02 (7th Cir. 1994) (finding that claim of sex discrimination based on practice of assigning female employees to unprosperous sales routes not actionable where EEOC charge was based on different discriminatory conduct, the practice of requiring employee to pay clients' insurance premiums). Because Tarpley's charge addressing race and sex discrimination did not

specifically complain of discrimination in connection with her resignation, she may not recover for constructive discharge under Title VII.[3]

### III. Title VII and FMLA Failure to Accommodate Claims (Count III)

Tarpley has asserted a claim for City Colleges' alleged failure to accommodate her disability purportedly under the ADA, the FMLA, and Title VII. City Colleges argues that she may proceed only under the ADA, as the FMLA and Title VII do not provide a right of action for failure to accommodate. The Court has found cases under Title VII for failure to accommodate one's religious practices, *see, e.g.*, *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012) (Title VII "require[s] an employer to make reasonable efforts to accommodate the religious practices of employees unless doing so would cause the employer undue hardship"), but not for failure to accommodate one's disability.[4] Moreover, aside from including Title VII in the heading of Count III, the First Amended Complaint does not include allegations that tie the failure to accommodate Tarpley's disability to one of the protected classes under Title VII. Nor does Tarpley respond to City Colleges' argument in her response to the motion to dismiss, which the Court understands as conceding the point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in waiver). Thus, the claim for failure to accommodate under Title VII is dismissed.

As for the FMLA, the Court has been unable to locate a right of action for failure to accommodate and Tarpley has not responded to City Colleges' argument to provide authority for

---

[3] As with her retaliation claim, City Colleges does not challenge Tarpley's ability to recover for constructive discharge under the FMLA or the ADA, and so those claims remain pending.

[4] A race or sex discrimination claim under Title VII may be cognizable where the adverse employment action is the employer's failure to accommodate the employee's disability on the basis of race or sex, but this is not the claim that Tarpley asserts in Count III. *See, e.g.*, *Matthews v. U.S. Steel Corp.*, No. 2:08-CV-37-PRC, 2010 WL 2076814, at *6 (N.D. Ind. May 24, 2010) (considering African American plaintiff's claim that defendant discriminated against her in violation of Title VII "by denying her the same reasonable accommodations as her white co-workers with medical restrictions").

her claim, again apparently conceding the argument. *Id.* It is possible that Tarpley is attempting to plead an FMLA interference claim. To state such a claim, she must allege that (1) she was eligible for FMLA protection, (2) City Colleges was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take FMLA leave, and (5) City Colleges denied her FMLA benefits to which she was entitled. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 635–36 (7th Cir. 2009). But because her pleading does not neatly fit these elements, the Court will not construe her FMLA failure to accommodate claim as an FMLA interference claim. If Tarpley believes that she has a basis for bringing such a claim, she may seek leave to amend her complaint to add it. At this stage, however, her FMLA failure to accommodate claim is dismissed.

### IV.     IIED Claim (Count IV)

City Colleges argues that Tarpley's IIED claim must be dismissed because it is time-barred. The statute of limitations is an affirmative defense that need not be anticipated in the complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint).

Tarpley's IIED claim is governed by a one-year statute of limitations. 745 Ill. Comp. Stat. 10/8-101; *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). She alleges that the actions of City Colleges and its employees were extreme and outrageous, but her First Amended Complaint does

10

not include allegations of actions taken by City Colleges or its employees after Tarpley resigned on August 16, 2013. This is the latest date, then, on which her IIED claim accrued. *See Cunliffe v. Wright*, --- F. Supp. 2d ----, 2014 WL 2808969, at *5 (N.D. Ill. June 20, 2014) (state law claims based on how plaintiff was treated during her employment or related to her termination accrued at the latest on the date plaintiff was terminated). Because Tarpley's complaint was filed over a year later on August 29, 2014, her IIED claim is time-barred.[5] *Id.*

## CONCLUSION

For the foregoing reasons, City Colleges' motion to dismiss [14] is granted. Tarpley's claims for Title VII constructive discharge in Counts I and II, Title VII retaliation in Count II, Title VII and FMLA failure to accommodate in Count III, and intentional infliction of emotional distress (Count IV) are dismissed. City Colleges is given until April 30, 2015 to answer the remaining allegations of the First Amended Complaint.

Dated: April 10, 2015

SARA L. ELLIS
United States District Judge

---

[5] Although the Court has found Tarpley's IIED claim to be time-barred, the Court also notes that she would be barred from recovering punitive damages against City Colleges for this claim. Section 2-102 of the Illinois Tort Immunity Act provides that "a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 Ill. Comp. Stat. 10/2-102; *Shaikh v. Watson*, No. 10 C 1715, 2011 WL 589638, at *2 (N.D. Ill. Feb. 8, 2011) (dismissing punitive damages request against City Colleges).