UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH A. TARPLEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   No. 14 C 6712 |
|     v. | ) |
| | )   Judge Sara L. Ellis |
| CITY COLLEGES OF CHICAGO, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Elizabeth A. Tarpley alleges that her employer, Defendant City Colleges of Chicago ("City Colleges"), failed to provide her with a reasonable accommodation and engaged in discrimination and retaliation against her in violation of the Americans with Disabilities Act of 1990("ADA"), 42 U.S.C. § 12101 *et seq.*, and interfered with her rights and retaliated against her for exercising her rights under the Family and Medical Leave Act of 1993("FMLA"), as amended, 29 U.S.C. § 2901 *et seq*. City Colleges moves for summary judgment [65]. Because no reasonable jury could find that Tarpley suffered an adverse employment action, the Court grants City Colleges' motion for summary judgment on Tarpley's discrimination and retaliation claims. Because Tarpley has failed to show that City Colleges refused to accommodate her disability, the Court grants City Colleges' motion on the failure to accommodate claim. Finally, because City Colleges approved every request for FMLA leave Tarpley submitted and Tarpley received all of the FMLA leave to which she was entitled, the Court grants City Colleges' motion with regard to the FMLA interference claim.

# BACKGROUND[1]

Tarpley was the Director of Information Technology[2] ("IT Director") at Kennedy King College ("KKC") from May 16, 2011 until she resigned her position on August 12, 2013. KKC is one of seven City Colleges' community colleges. Tarpley's initial salary was $90,000 per year. Her salary was subsequently increased to $92,250 per year on July 1, 2013. Tarpley reported directly to the Chief Information Officer ("CIO") of KKC with a dotted-line reporting relationship to the President of KKC. When Tarpley began employment at KKC, the CIO was Craig Lynch. Lynch subsequently received a promotion to Chief of Staff to the Chancellor of City Colleges in 2012, at which time Arshele Stevens became CIO. In June 2013, Stevens was appointed Interim President of KKC and Lynch reassumed the role of CIO on an interim basis and Tarpley once again became a direct report of Lynch at this time.

Tarpley's job as IT Director required her to work long hours, including frequent nights and weekends. Tarpley responded to IT emergencies and was responsible for ensuring that all staff and students of KKC could access KKC's IT resources. Due to the demanding nature of her position, Tarpley was required on occasion to work on days that she had called in sick or planned to take a vacation day. None of Tarpley's superiors recall an instance of a formal complaint or discipline against Tarpley for poor job performance.

While Tarpley was employed at KKC, she suffered from several health conditions including anxiety, depression, endometriosis, and ovarian cysts. Tarpley also was periodically

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Facts ("JSUF") and additional facts proffered by Tarpley in her opposition to summary judgment. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to Tarpley, the non-movant.

[2] Tarpley's initial title was Assistant Dean of Information Technology. Her title changed to IT Director in July 2011, but this change did not affect her job duties or salary.

undergoing in vitro fertilization ("IVF") procedures in an attempt to become pregnant. Tarpley became pregnant as a result of the IVF procedures, but her doctors determined the pregnancy was not viable two months after conception. As a result, Tarpley was required to undergo a medical procedure to remove the fetus. Each of these medical conditions required Tarpley to be absent from work for varying periods during her employment at KKC.

Throughout her employment, Tarpley took leave on several occasions on both an intermittent and a continuous basis. Tarpley first took continuous FMLA leave from June 22, 2012 through July 20, 2012. She next applied for and received approval to take intermittent FMLA leave during the 2012–2013 academic year. Pursuant to her intermittent leave plan, Tarpley took some amount of FMLA leave on thirteen days during this period totaling approximately 10.75 days of leave. When Tarpley applied for these continuous and intermittent FMLA plans, City Colleges was calculating FMLA leave on a calendar year basis, under which an employee's bank of FMLA days would entirely reset on a given date. On January 30, 2013, City Colleges announced a district-wide change to its FMLA policy, under which FMLA leave would be calculated on a rolling 12-month period effective April 1, 2013. This policy affected all City Colleges employees, including Tarpley.

On March 13, 2013, Tarpley notified Stevens and President Ester that she would be working from home the following day after a doctor's appointment. And on March 19, 2013, Tarpley emailed Stevens and President Ester to inform them that she was taking an FMLA sick day. However, Tarpley ended up working from home that day and did not record the day as an FMLA day.

Tarpley again took FMLA leave from May 6 through May 13, 2013. But, on May 10, 2013, Tarpley informed Stevens that she would be working from home that day. Stevens

determined that because Tarpley had not sought prior authorization to work from home that day, it would be recorded as an FMLA sick day and informed Tarpley of this. Tarpley objected via email, and Stevens responded that there is no work from home policy at KKC and that if Tarpley wished to further discuss the matter she should schedule a meeting with Stevens or Human Resources ("HR"). Tarpley did not schedule any meetings on this issue.

Tarpley took two half days of FMLA leave on May 21 and 22, 2013, and a full day of leave on May 27, 2013. In late May, Tarpley also sent her IVF timeline to President Ester, Stevens, and HR stating that she would need to be on leave again beginning the first week of June for up to three months. Stevens told Tarpley to direct the request for leave to Heather Ward, the District Office Benefits Supervisor.

Tarpley submitted the request on May 28, 2013, requesting leave from June 5 through August 5, 2013. Ward informed Tarpley that because she had already used 7.2 weeks of FMLA leave during the prior twelve-month period, she only had approximately 5 weeks of FMLA leave remaining. At some point during the review process, Stevens requested copies of Tarpley's Certificates of Attendance ("COAs"), so HR could determine how much FMLA time Tarpley had available. Tarpley's FMLA request was approved for five weeks, from June 6 to July 12, 2013.

Recognizing that the five-week leave did not cover the full period she requested pursuant to her doctor's instructions, Tarpley asked Ward what other options were available to her. Ward informed her that she could request a personal leave of absence. Tarpley submitted a request for a personal leave of absence, but then asked via email to modify her request to a request for a reasonable accommodation for her disability. Tarpley did not follow-up by making a request under City Colleges' ADA Reasonable Accommodation Request Procedure, and before City

4

Colleges had the opportunity to review the email request, Tarpley requested a return-to-work authorization form. Tarpley provided documentation from her physician that she could return to work without restriction on July 15, 2013, and did so, expending her full allotment of FMLA leave from the prior twelve-month period.

While Tarpley was on leave from June 6 through July 12, 2013, Stevens became interim president of KKC. During the transition period, both Stevens and Ester were still working on campus and Stevens moved into Tarpley's office on a temporary basis because it was vacant and it was close to the President's Office. Tarpley became aware of Stevens using her office and emailed Stevens about it. In the same email, Tarpley asked Stevens to loop her in on communications so she could stay up to speed while on leave. Stevens responded that Tarpley should not be engaging in work related activity while on leave. Stevens left Tarpley's office before Tarpley returned to work and began using the President's Office.

Approximately ten days later, while still on leave, Tarpley emailed her subordinate, Lonnie Washington, asking that he forward her work related correspondence so she could get up to speed before returning to work. Stevens was copied on this email and again informed Tarpley that she should not perform work related tasks while on leave and that she would be brought up to speed upon her return.

Additionally, while Tarpley was on leave, City Colleges posted several job openings for IT Director positions at various campuses including KKC. City Colleges included KKC in the recruiting effort as a contingency plan in the event that Tarpley did not return to work. Moreover, the administration was considering having two IT Directors at KKC. Tarpley became aware of the job posting and contacted Stevens and Lynch about it on June 23, 2013. At this

point, Stevens had identified a candidate she felt was qualified for the role, but the following day she removed him from consideration from the position and did not consider anyone else.

On July 15, 2013, the day Tarpley was scheduled to return to work, she did not come to work and instead sent Stevens and Lynch an email stating that she was distressed that the IT Director job was still posted and felt as though she had been fired. In response, Stevens asked Stephanie Tomino, Vice Chancellor for Human Resources, to call Tarpley. Tomino called her and informed her that she was not fired and that the job posting was not intended to replace her but to generate candidates for the entire district. Tarpley stated that she understood the explanation and appreciated the call. Tarpley returned to work the following day.

Upon Tarpley's return to work, she received a raise of $2,250 per year and resumed her role as IT Director for KKC. The IT Director position for KKC was still posted, however. But when Tarpley brought this to Tomino's attention, City Colleges promptly removed the posting.

On July 26, 2013, Tarpley submitted a request for intermittent FMLA leave related to her endometriosis. She requested approval for one to two days of leave per month. On August 3, 2013, City Colleges approved the leave request. Also on July 26, 2013, Tarpley submitted a request for continuous leave from August 5 through August 23, 2013. On August 5th, Tarpley modified this request to shorten it to two weeks. City Colleges did not approve or deny this request because Tarpley resigned her position on August 5th.

Tarpley for the first time, on July 31, 2013, requested information about her ability to work from home as a reasonable accommodation for her disability. Tarpley submitted this request via email and not according to City Colleges' established procedure, but City Colleges considered the request anyway. City Colleges did not reach a conclusion on the request because Tarpley resigned five days later.

6

Tarpley submitted her resignation to Lynch via email on August 5, 2013. However, regretting this decision, she contacted Lynch on August 8th via text message asking to speak with him regarding her resignation. Lynch responded via email telling Tarpley to set up a meeting if she wished to discuss it. Tarpley responded that she was willing to stay on until the end of the year or until a replacement was found. Tarpley met with Lynch and Tomino on August 12th and reiterated her willingness to stay on until a replacement was found; however, she never directly told Lynch, Stevens, or Tomino of her desire to rescind her resignation. Following the meeting, Tarpley returned to KKC's campus and informed Araceli Cabrales, KKC's HR Director, that she wished to resign effective that day, and returned her laptop, keys, and other City Colleges property. Tarpley then sent an email to Cabrales stating that she was resigning effective immediately.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v.*

*Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

**I.     ADA Claims**

    A.     Failure to Accommodate

Tarpley alleges that City Colleges violated the ADA by failing to accommodate her disability because she was not permitted to work from home. To survive summary judgment on a failure to accommodate theory of ADA discrimination, an employee must show that a reasonable jury could find "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747–748 (7th Cir. 2011) (citation omitted). City Colleges argues that it did not fail to accommodate Tarpley and therefore her claim fails to meet the third prong.

To survive summary judgment on a failure to accommodate claim, a plaintiff need not show that she suffered an adverse employment action, she must simply demonstrate "that she is 'otherwise qualified' for the job, and that her employer refused to make a 'reasonable accommodation' for her disability." *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895–96 (7th Cir. 2003). Liability for a failure to accommodate normally attaches only after a plaintiff made a request for a reasonable accommodation. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). "Absent special circumstances, like a severe cognitive disability or mental illness, the employee's initial duty requires that he or she indicate to the employer that

8

she has a disability and desires an accommodation." *Id.* at 1178 (citations omitted) (internal quotation marks omitted). Here, Tarpley did not request a reasonable accommodation until June 2013 when she requested that the leave she was taking at that time be treated as a reasonable accommodation. She quickly followed this request with a request for a return-to-work authorization, which City Colleges granted, effectively mooting the request for a reasonable accommodation.

Tarpley's second, and final, request for a reasonable accommodation came on July 31, 2013. At this time, she asked to work from home periodically as a reasonable accommodation. Five days after making this request, and before City Colleges could fully review it and make a determination on whether to grant it, Tarpley resigned her position. Therefore, there is no evidence that upon being notified of Tarpley's disability and request for accommodation, that City Colleges ever refused to provide her with such an accommodation, and her claim fails.

   B.   <u>Discrimination</u>

To prevail on her ADA discrimination claim, Tarpley must prove "1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009). In its motion for summary judgment, City Colleges does not argue that Tarpley was not disabled or otherwise qualified to perform her job. Rather, City Colleges asserts that it is entitled to summary judgment because Tarpley did not suffer an adverse employment action.

An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of

job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (alteration in original) (internal citation omitted). Such actions include "(1) diminishing an 'employee's compensation, fringe benefits, or other financial terms of employment,' including termination; (2) reducing long-term career prospects 'by pre-venting him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted'; and (3) changing 'the *conditions* in which [an employee] works . . . in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment." *Id.* (alteration in original) (quoting *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002)).

Assuming Tarpley has met the first two prongs of an ADA discrimination claim, she did not suffer an adverse employment action and her claim fails. In her response to City Colleges' motion for summary judgment, Tarpley does not address the issue of adverse employment action at all. Her response is largely a restating—at times inaccurate—of the JSUF with some additional details coming from various depositions and documents. She does not point to a single disputed material fact nor provide any support from case law to rebut City Colleges' arguments. To survive summary judgment on her claim, she must present evidence to support a genuine issue of fact that the treatment she experienced at the hands of her employer constitutes an adverse employment action. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 578 (7th Cir. 2001). Tarpley does not even attempt this, and as City Colleges demonstrates in its motion, none of the treatment Tarpley experienced rises to the level of an adverse employment action.

Tarpley appears to claim that the adverse employment action she suffered took several forms, including: (1) her supervisor, Stevens, reviewing her COAs; (2) City Colleges instituting a district-wide change to its FMLA policy in which usage of FMLA leave would be calculated

10

on a rolling basis rather than a calendar year basis; (3) Tarpley not receiving compensation for working on one day that was recorded as an FMLA sick day; (4) not allowing Tarpley to communicate with her team while she was on FMLA leave; (5) not allowing Tarpley to work from home; (6) City Colleges advertising an opening for IT Director at KKC while Tarpley was on FMLA leave in the summer of 2013; (7) that she experienced "mockery" from other City Colleges employees; and (8) that her resignation was a constructive discharge. None of these actions individually or even in combination constitute adverse employment actions.

With regard to the review of her COAs, it is undisputed that Stevens sought the COAs in order for HR to determine how much FMLA leave Tarpley had available to use towards her summer 2013 FMLA leave request. Furthermore, it is undisputed that reviewing Tarpley's COAs is Stevens' responsibility as Tarpley's supervisor. Additionally, Tarpley makes no allegation that this review resulted in a denial of her FMLA leave request or had any other adverse result. Therefore this does not constitute an adverse employment action.

City Colleges' change to its FMLA accounting policy in 2013 similarly does not constitute an adverse employment action. The policy change affected all City Colleges employees and Tarpley does not assert that this policy change was made in response to her requests for FMLA leave or an accommodation. Furthermore, while the change could in theory have resulted in Tarpley receiving less FMLA leave than she would have under the former policy, City Colleges approved every request for FMLA leave Tarpley submitted and Tarpley presents no evidence or argument that she in fact did suffer a loss of leave as a result of this change.

Tarpley asserts that because she worked from home on May 10, 2013—a day she previously had requested as FMLA leave—she should have been compensated for her work this

11

day.  However, even if Tarpley was authorized to work from home that day, which it is undisputed that she was not, a single uncompensated day of work is not a sufficiently adverse employment action to establish a discrimination claim.  *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 302 (7th Cir. 2004) ("[N]on-payment during his disputed absence did not work a quantitative or qualitative change in the conditions of his employment."); *see also Rhodes v. Illinois Dep't. of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004) (single uncompensated day of work is not a materially adverse employment action) *overruled on other grounds by Ortiz*, 834 F.3d 760.

It is undisputed that Stevens directed Tarpley and her team not to communicate regarding work related matters while Tarpley was on FMLA leave in June and July of 2013.  However, Tarpley has not linked this directive to any change in the terms of her employment or responsibilities.  It appears to, at most, have been frustrating to Tarpley, but mere frustrations or annoyances do not constitute adverse employment actions.  *See Herron*, 388 F.3d at 301 ("minor annoyances" or "mere unhappiness and inconvenience[s]" do not constitute adverse employment actions).

Advertising for Tarpley's position also does not constitute a materially adverse employment action.  It is undisputed that City Colleges posted this job opening in order to potentially add an additional staff member to the IT department at KKC or to be prepared in the event that Tarpley did not return from leave.  There is no evidence in the record that it was posted with the intention of terminating and replacing Tarpley.  Tarpley advances no facts or argument that the posting of this job in any way impacted the terms or conditions of her employment; therefore, it does not constitute an adverse employment action.

The "mockery" Tarpley asserts she experienced also does not rise to the level of an adverse employment action. It is not clear what conduct specifically constituted mockery, but the Court's best interpretation of her argument is that she is describing the following events: the posting of the IT Director job, limiting her communications with her team while she was on FMLA leave, conducting an internal discussion on her various alterations to her June 2013 leave request, Stevens having HR respond to Tarpley instead of responding to her directly regarding her job, and Tomino forwarding to colleagues Tarpley's request for information about how to rescind her resignation with the note "Ha! Elizabeth wants to stay. . . I did not want to withhold this entertaining turn of events." Doc. 67 ¶ 138. None of the alleged "mockery" that Tarpley directly experienced had any negative impact on her job. There must be some connection between the comments and an adverse employment action for them to be actionable. *See Roszkowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (there must be some link between derogatory comments and an adverse employment action). With regard to the comments Tarpley to which Tarpley was not privy, those do not support a finding of a hostile work environment or other adverse employment action because they were largely innocuous, had no impact on her employment, were not directed at Tarpley, and there is no evidence that the comments were made because of Tarpley's disability or use of FMLA leave. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271–72 (7th Cir. 2004) (in determining whether comments subject an employee to a hostile work environment, courts should consider whether the employee heard them directly, the frequency of the comments, and whether they interfered with an employee's ability to perform her job). No reasonable jury could find that the conduct above constitutes a hostile work environment or had any negative impact on Tarpley's employment.

Tarpley also argues that her resignation was in fact a constructive discharge. Constructive discharge is an adverse employment action. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). To constitute a constructive discharge, an employee must have resigned from a position because conditions were so bad that a reasonable employee would find them unbearable. *Id.* It is not clear what conduct Tarpley alleges constituted harassment so severe that maintaining her employment became unbearable. Furthermore, it is undisputed that after resigning Tarpley "realized that she had made a terrible mistake and wanted to continue working for City Colleges in the job that she loved, was good at, and was making a valuable contribution." Doc. 67 ¶ 134. Absent some evidence that her work environment was intolerable, no reasonable jury could find that Tarpley was forced to resign. Therefore, she was not constructively discharged.

Finally, Tarpley did not respond to City Colleges' arguments that she did not suffer an adverse employment action, waiving her opportunity to do so. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Even if Tarpley had responded, it would not have altered the result, because the undisputed facts do not support a finding of an adverse employment action under any precedent of which the Court is aware. Because the Court cannot find that Tarpley suffered an adverse employment action, the Court grants judgment for City Colleges on Tarpley's discrimination claim.

C. Retaliation Claim

City Colleges also seeks summary judgment on Tarpley's ADA retaliation claim. The ADA prohibits employers from retaliating against employees who assert rights under the Act. *See Dickerson v. Bd. of Tr. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601–02 (7th Cir. 2011). To avoid summary judgment, Tarpley must show that a reasonable jury could find that she

suffered an adverse employment action because she engaged in statutorily protected activity. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013). Tarpley argues that City Colleges retaliated against her by engaging in the same adverse employment activities discussed in Section B above. As the Court noted, none of the conduct Tarpley cites rises above the level of minor annoyances and do not amount to adverse employment actions. Therefore, her ADA retaliation claim fails as well.

## II.     FMLA Interference Claim

Tarpley alleges that she experienced interference with her right to take leave to which she was entitled under the FMLA and that her employer retaliated against her for taking leave under the FMLA. To establish an FMLA interference claim a plaintiff must show that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). It is undisputed that Tarpley took all of the FMLA leave that she requested and to which she was entitled. Furthermore, KKC approved every FMLA request Tarpley made. Therefore, Tarpley's FMLA interference claim fails as she does not satisfy the fifth requirement.

## III.    FMLA Retaliation Claim

Finally, City Colleges seeks summary judgment on Tarpley's FMLA retaliation claim. Courts view FMLA retaliation claims the same way they view retaliation claims under other employment statutes. *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). Just as under her ADA claim, to survive summary judgment on her FMLA retaliation claim, Tarpley must show that she suffered an adverse employment action as a result of her taking FMLA leave. *Id.*

15

Because Tarpley has not provided any evidence of any actionable adverse employment action, her FMLA retaliation claim also fails.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant City Colleges of Chicago's motion for summary judgment [65]. The Court enters judgment for City Colleges on all remaining counts and terminates this case.

Dated: August 22, 2017

_____
SARA L. ELLIS
United States District Judge